S00A1642. FREEMAN v. THE STATE.
(539 SE2d 127)

THOMPSON, Justice.

Antonio Freeman was convicted by a jury of the felony murder of Aaron Pounds, Jr.; aggravated assault against Brandon and Christopher Pounds (two counts); and burglary.[1] On appeal, Freeman sub-

---

However, the document is unsigned, and there is no indication that it was considered by the trial court.

[1] The crimes occurred on December 23, 1998. A multi-count indictment was returned on February 22, 1999, charging Freeman and others with malice murder, felony murder while in the commission of an armed robbery, felony murder while in the commission of an aggravated assault, armed robbery, burglary, and aggravated assault (two counts). A first trial

mits that the trial court erroneously allowed the admission of hearsay evidence. Finding no error, we affirm.

After learning that Aaron Pounds, Jr. was about to acquire a quantity of marijuana, Freeman and his co-defendants Bernard Carr and Henry Thomas plotted to rob him. They enlisted the help of Carr's girlfriend, Lakesia Carithers, who drove them to the victim's residence. Thomas, who was known to the occupants, was permitted entrance. As prearranged, Thomas paged Freeman who entered the apartment along with Carr. Thomas retreated outside to Carithers' car. Freeman and Carr proceeded directly to Aaron's bedroom where they found him asleep. The two produced pistols and ordered Aaron off the bed. Carr then flipped the mattress over where he found both marijuana and money. When Aaron resisted, Freeman fatally shot him in the abdomen. Freeman took the money and the two fled from the apartment and drove away with Lakesia Carithers who had been waiting for them outside. During the course of the robbery and the subsequent struggle, Aaron's younger brothers, Christopher and Brandon, were held at gunpoint by Freeman and Carr.

1. The evidence was sufficient for a rational trier of fact to have found Freeman guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Freeman asserts that the trial court erred in admitting hearsay testimony of Freeman's wife, Erika, and James Harris concerning a scheme to murder State's witness Lakesia Carithers,[2] under the exception to the hearsay rule for declarations of a co-conspirator. OCGA § 24-3-5 ("[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all").

Erika Freeman testified that after her husband's arrest, he telephoned her from jail and asked her to set up a conference call between himself, and his friends James Harris and Rodney Allison. Erika arranged the call and overheard portions of the conversation

ended in a mistrial on August 24, 1999. Retrial commenced on October 25, 1999, and on October 29, 1999, a jury found Freeman guilty of felony murder with the underlying felony of aggravated assault, burglary, and two counts of aggravated assault. Freeman was sentenced on November 3, 1999, to life imprisonment for felony murder plus 20 consecutive years. A motion for new trial was filed on November 30, 1999, amended on December 2, 1999, and denied on April 24, 2000. Freeman's notice of appeal was filed on May 24, 2000. The case was docketed in this Court on June 20, 2000, and oral argument was heard on September 29, 2000.

[2] When Carithers told Freeman that she was going to report their conduct on the night of the shooting to the police, he told her "to stop running her mouth," and then threatened her with harm if she were to divulge that information. Nevertheless, Carithers implicated Freeman and Carr in the shooting. She was subsequently scheduled as a witness for the State.

which involved a plot to murder Carithers. Freeman posits two reasons why the trial court improperly admitted hearsay testimony concerning this scheme.

(a) Freeman asserts that the State failed to make a prima facie showing of the existence of a conspiracy independent of the co-conspirators' declarations so as to render those declarations admissible. See *Copeland v. State*, 266 Ga. 664 (2) (a) (469 SE2d 672) (1996). However, the State need not prove an express agreement between the parties in order to establish a conspiracy. *Waldrip v. State*, 267 Ga. 739 (10) (b) (482 SE2d 299) (1997). "The essence of conspiracy is a common design, and conduct which discloses a common design may give rise to an inference of conspiracy." Id. at 747. Whether a conspiracy exists is a question for the jury to determine. *Boatwright v. State*, 193 Ga. App. 141 (1) (387 SE2d 386) (1989).

In the present case, the jury was authorized to infer the existence of a conspiracy based on Carithers' testimony that Freeman threatened her; the fact that the plot to kill Carithers was part of the larger conspiracy to rob Aaron Pounds; Erika Freeman's testimony, exclusive of the hearsay declarations, of the plot to kill Carithers; and attempts by Freeman and his co-defendants to dispose of the murder weapon and other fruits of the crime. From this evidence, the jury could find a common design to thwart the prosecution by eliminating a material witness who would testify against the defendants. *Waldrip*, supra at 739 (10) (b).

(b) It was shown that Harris was acting as an agent of the State when he participated in the telephone discussions concerning the plan to murder Carithers. While we agree with the rationale that the elements of the crime of conspiracy have not been met unless an individual conspires with at least one bona fide conspirator, Freeman overlooks the fact that the other parties to the conversation were also involved in the illegal scheme. See generally Developments in the Law — Criminal Conspiracy, 72 Harv. L. Rev. 920, 926 (1959).

3. There is no merit to Freeman's assertion that his conviction for felony murder while in the commission of an aggravated assault must be reversed because he was not charged with the independent crime of aggravated assault against the murder victim. "[A] person who commits a felony may be convicted for any murder that occurs as a result of the commission of that felony, without regard as to whether he commits, intended to commit, or acted to commit the murder of the victim." *Roberts v. State*, 257 Ga. 180, 181 (2) (356 SE2d 871) (1987).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 13, 2000.

Antonio Freeman, *pro se.*

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.